EXHIBIT 1

# REAL ESTATE OPTION TO PURCHASE AGREEMENT

THIS REAL ESTATE OPTION TO PURCHASE AGREEMENT ("Agreement") is executed effective as of the 30th day of December, 2010 ("Effective Date"), by and between **MURPHY LAND COMPANY, LLC**, an Idaho Limited Liability Company ("Seller"), and **JAMES C. HILLIARD** ("Buyer").

## *RECITALS:*

WHEREAS, Seller represents that they own that certain real property in fee simple absolute situated in Owyhee County, Idaho, which real property is known as the Crystal Springs Farm and is more particularly described in Exhibit "A" attached hereto and made a part hereof TOGETHER WITH all of Seller's right, title and interest, if any, in all appurtenances, privileges, easements, franchises, and tenements of the foregoing described property, including all mineral rights, rights to hydrocarbons and other commercially valuable substances in , under or produced from the property, all air rights, water, water rights (whether ground or surface rights) and all water permits and licenses issued for the property or for which the property is entitled to be issued and any shares of any water or canal company providing water to the property (collectively the "Property"); and

WHEREAS, Seller is purchasing the subject property (the "Initial Sale") from Buyer subject to this agreement. Seller and Buyer desire to enter into a real estate option to purchase agreement whereby Seller grants to Buyer the exclusive option to purchase all right, title and interest in and to the Property described above, all upon the terms and conditions and for the consideration set forth herein.

NOW THEREFORE, in consideration of the mutual covenants of Seller and Buyer contained herein, and other good and valuable consideration, it is agreed as follows:

## *AGREEMENT*

**Section 1. Purposes.** Seller hereby grants exclusively to Buyer an Option to Purchase all right, title and interest in and to the Property. Prior to the exercise of the option, this Agreement shall constitute an option with respect to the Property. Upon exercise of the Option, this Agreement will, without further act, be converted to a purchase agreement with respect to the Property.

**Section 2. Term.** This Agreement shall commence on the Effective Date and continue for a "Term" of six (6) years.

**Section 3. Option Consideration.** Seller has concurrently herewith purchased the Property from Buyer herein and as partial consideration for such purchase the Seller agreed to grant Buyer the option to purchase the Property back from Seller on the terms provided for herein.

**Section 4.    Option to Purchase.** Seller hereby grants to Buyer the exclusive right and Option to Purchase all right, title and interest in and to the Property for, and only for, the location of a nuclear power plant facility. Buyer may exercise its Option to Purchase at any time during the Term by giving at least sixty (60) days advance written notice to Seller at Seller's address provided herein of its intent of such exercise ("Notice").

**Section 5.    Purchase Price.** If this option is exercised during the first three (3) years of its Term, the total Purchase Price for the Property shall be Eleven Million Four Hundred Thousand and No/100 Dollars ($11,400,000.00), and if exercised during the final three (3) years of this Option to Purchase the Purchase Price shall be Thirteen Million Six Hundred Eighty Thousand and No/100 Dollars ($13,680,000.00); provided, however, that in the event that Buyer, during the Term of this Option to Purchase, expends funds to erect capital improvements to the Property, as opposed to expenditures for normal maintenance, the Purchase Price shall be increased by the amount of funds so expended by Seller and as approved by Buyer following review of all payment and receipt documentation relating to such capital improvements, which approval shall not be unreasonably withheld.

**Section 6.    Title.** Within ten (10) days after the Notice, Seller shall furnish to Buyer a Commitment for a Standard Policy of Title Insurance from Guaranty Title, Inc. ("Title Company") for the Property, including copies of all documents, instruments and matters shown as exceptions or referenced therein. Purchaser may object to any matter shown on the Title Commitment other than exceptions noted on the title policy provided by Buyer to Seller at the closing of the Initial Sale. Unless written objections are made on or prior to the date that is thirty days (30) from the Effective Date, they shall be deemed waived. If any objections are so made, Seller shall cure such objections prior to Closing. If the objections are cured within the time permitted in the notice, the Closing shall occur as otherwise permitted in this Agreement. If Seller notifies Buyer that Buyer cannot cure any or all title objections, Buyer may either (i) elect to waive said objection by notice to seller and proceed to Closing, (ii) notify Seller that it elects not to proceed to Closing whereupon this Agreement shall terminate and no longer be binding on either of the parties hereto, or (iii) proceed to Closing and be allowed to reduce the Purchase Price by such amounts as are necessary to cure any or all title objections.

Seller hereby represents and warrants to Buyer, and its successors and assigns, that: the Property will be conveyed free and clear from all liens and encumbrances, including any leases, rights or licenses granted to third persons by, through, or under Seller, except taxes not yet payable, and matters of record in Owyhee County, Idaho, if any; the consummation of this Agreement will not result in or constitute a default or an event that, with notice or lapse of time or both, would be a default, breach or violation of any contract, commitment or arrangement to which Seller is a party, or by which they are bound; Seller shall not create, permit or suffer any reservations, restrictions and easements on the Property unless expressly subordinated to Buyer's rights hereunder; to the best of Seller's knowledge, there is no environmental or physical condition on the Property which is, or would be, a violation of any applicable federal, state or local law, regulation or ordinance, and that Seller has not received any notice of any investigation of any such condition or violation; Seller is lawfully seized of the Property, that Seller has good right and lawful authority to convey the Property.

**Section 7.     Survey.**  The Buyer shall have the right to have performed, at Buyer's expense, a survey of the property or portions thereof to be completed by an Idaho licensed surveyor at any time during the Term hereof.

**Section 8.     Inspection; Condition of Property at Closing.**

(a)     **Right of Entry.**  At any time during the Term hereof, Buyer and its employees, agents and independent contractors shall have the right to enter the Property from time to time upon reasonable prior notice to Seller to inspect the same, perform surveys, environmental assessments, soil and other tests and for other investigations and activities consistent with the purposes of this Agreement and of Buyer's desire to possibly utilize the Property as the site of an electrical power generating facility.  Seller shall reasonably cooperate with Buyer's inspections during the inspection period.  Buyer shall restore any damage to the Property caused by such inspection and shall indemnify and hold Seller harmless from all liabilities incurred by Seller and arising out of any such entry, except that Buyer shall not have any obligation in respect of any Hazardous Materials discovered about the Property.  The foregoing indemnity shall survive termination of this Agreement.  Hazardous Material are defined as any substance, chemical, waste or material that is or becomes regulated under applicable law because of its toxicity, infectiousness, radioactivity, explosiveness, ignitability, corrosiveness or reactivity, including asbestos, polychlorinated biphenyls, nuclear fuel or materials, radioactive materials, explosives, known carcinogens, petroleum products and by-products and any substance, chemical, waste or material regulated by any Hazardous Material Law.  Hazardous Material Laws include but are not limited to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, the Superfund Amendments and Reauthorization Act of 1986, the Resource Conservation and Recovery Act, the Toxic Substances Control Act, as such acts may be amended from time to time, and any other Federal, state, county, municipal, local or other law, statute, code, ordinance, rule or regulation which relates to or deals with human health or the environment in the jurisdiction in which the Property is located.  Between Seller's execution of this Agreement and the Closing, Seller shall maintain the Property as an agricultural farming operation in a manner consistent with past practices, reasonable wear and tear and damage or destruction by casualty or condemnation excepted.  Seller shall not enter into any new leases or contracts, or any material amendment of any lease or contract, to the extent such contract, lease or amendment would bind Buyer after the Closing without obtaining Buyer's prior written consent thereto, which consent shall not be unreasonably withheld or delayed.  If Buyer does not object by written notice to Seller within five (5) business days after Seller's written request for any consent, such lease, contract or amendment shall be deemed to have been approved by Buyer.

(b)     **Condition of Property at Closing.**  Seller shall deliver the Property to Buyer at Closing in a condition consistent with the representation and warranties in this Agreement.

**Section 9.     Closing.**

(a)     **Closing Date.**  The closing of the purchase of the Property ("Closing") shall be held at the offices of the Title Company, or at such other place as Seller and Buyer may agree within sixty (60) days after the date of exercise of the Option.

(b) **Closing Deliveries by Seller.** At the Closing, Seller shall execute and, where appropriate, acknowledge, and/or deliver to Buyer following:

   i. A Warranty Deed to the Property

   ii. Legal and actual possession of the Property

   iii. Such other instruments and matters as the Title Company may require as a condition to issuing its policy of title insurance.

   iv. Affidavit stating that Seller is not a "foreign person" within the meaning of Section 1445 of the Internal Revenue Code of 1986.

   v. All water rights transfer documents

(c) **Seller's Right to Remove Growing Crops.** Seller shall have the right to remove any and all growing crops on that portion of the subject property to be purchased hereunder or, in the alternative, Buyer may elect to reimburse Seller for any documented costs incurred in the growing of such crops.

(d) **Payment of Purchase Price.** At Closing, Buyer shall pay the Purchase Price to Seller. The Purchase Price may be paid by certified or bank cashier's check or by wire transfer of immediately available funds.

(e) **Closing Adjustments.** The following adjustments shall be made at the Closing:

   i. General real estate taxes in respect of the Property due and payable in the year of Closing shall be prorated on a daily basis as of the Closing Date, with Seller responsible for those allocated to the period prior to the Closing Date and Buyer responsible for those allocable subsequent thereto.

   ii. Seller shall pay all title charges for the issuance of the Owner's Title Commitment, the premium for an owner's title insurance policy for the Property.

   iii. Any Closing or escrow fee payable to the Title Company shall be borne equally by Seller and Buyer.

   iv. Each party will pay their own attorney fees and real estate commissions will be allocated in accordance with the prior mutual agreement of the realtors.

   v. Buyer shall pay all recording and transfer fees to include the transfer of water rights.

If any of the amounts to be apportioned under this Section cannot be calculated with complete precision because the amount or amounts of one or more items included in such calculation are not then known, such calculation shall be made on the basis of reasonable estimates of Seller and Buyer, subject to prompt adjustment (by additional payment by Buyer to Seller or by refund from Seller to Buyer) when the amount of any such item becomes known. The obligations under this Section shall survive the Closing.

**Section 10.** **FIRPTA.** Seller represents and warrants to Buyer that Seller is not a "foreign person" as defined in IRC Section 1445, as amended, and the regulations issued thereunder ("Code Withholding Section").

**Section 11.** **General Representations and Warranties of Buyer.** Buyer hereby represents and warrants to Seller as follows:

(a) That no consent, approval or authorization by an individual or entity or by any court, administrative agency or other governmental authority is required in connection with the execution and delivery by Buyer of this Agreement or any other documents required to be executed or delivered by Buyer pursuant hereto, or the consummation of the transactions contemplated thereby. The consummation of the transactions contemplated hereby will not result in any breach of, nor constitute a default under, any mortgage, deed of trust, lease, bank loan, or credit agreement or other instrument to which Buyer is a party, or by which Buyer is bound or affected.

(b) That the signatories of this Agreement on behalf of Buyer have full legal authority to execute the same and to bind Buyer thereby, without the necessity of any further action, and that Seller is entitled to rely thereon.

**Section 12.** **Indemnification.** Buyer hereby indemnifies and agrees to hold Seller harmless from and against any liability arising from personal injury, death or property damage when such is caused by Buyer's actions on the Property during the Term, provided that nothing herein shall relieve Seller from and against such liabilities for his own negligence or for the negligence of persons or entities acting as agents of Seller.

**Section 13.** **Broker.** To the extent any person or entity asserts a claim for any commission, fee or other consideration by reason of the transaction contemplated hereunder, which such claim is based upon statements or conduct of a party to this transaction, then that party shall indemnify and hold harmless the other party to this Agreement from any and all costs (including attorney fees) or award resulting from such claim.

**Section 14.** **Assignment.** The rights of Buyer hereunder may not be assigned without the prior written consent of Seller, which consent shall not be unreasonably withheld, excepting, that Buyer may freely assign its rights hereunder to an affiliate, subsidiary or partner. The provisions of this Agreement shall inure to the benefit of and bind all successors in interest of Seller and Buyer taking the rights so assigned.

**Section 15.   Buyer Default; Termination.** Failure by Buyer to perform or comply with any term, provisions or conditions, express or implied, hereunder shall constitute a default. Any default by Buyer under this Agreement must be cured within ten (10) business days after Buyer receives notice of such default from Seller. In the event Buyer fails to timely cure a default, Seller may terminate this Agreement by delivering to Buyer written notice of such termination.

Buyer may terminate its rights under this Agreement at any time prior to the exercise of its Option by giving Seller written notice of Buyer's intent to terminate. If Buyer elects to terminate prior to the exercise of the Option, all rights of Buyer to the Property shall cease, and this Agreement will immediately be null and void. Seller shall retain all consideration paid by Buyer under the Agreement. Buyer shall not be required to make any further payments or perform any further obligations hereunder.

**Section 16.   Taxes.** Subject to pro-ration at Closing, Seller agrees to pay, when due, all taxes and assessments against the Property and all taxes resulting from Seller's use thereof.

**Section 17.   Notice.** Any notice required or desired to be given under this Agreement shall be in writing and shall become effective when personally served upon the party to be given such notice, within five (5) days of posting by certified or registered mail, return receipt requested, or when delivered by facsimile or other wire service. Until notified otherwise in writing, the addresses for such notices shall be:

Seller:           c/o Lance Funk
                  3853 Rast Road
                  American Falls, ID 83211

Buyer:            James C. Hilliard
                  3275 West 111th Drive
                  Westminster, CO 80031

With a copy to:   David B. Lincoln, Esq.
                  Moffatt, Thomas, Barrett, Rock & Fields, Chtd.
                  101 S. Capitol Blvd., 10th Floor
                  P. O. Box 829
                  Boise, Idaho 83701
                  Office: (208) 345-2000
                  Fax:    (208) 385-5384

**Section 18.   Binding Effect.** All covenants, conditions and terms of this Agreement shall be of benefit to and run with the Property and shall bind and inure to the benefit of the parties hereto, their respective heirs, assigns and successors. Nothing herein shall be construed to create, expressly or by implication, a partnership, joint enterprise, principal and agent, or the like, between the parties. The terms of this Agreement, to the extent they are in addition to, and not in conflict with, the Deed, shall survive Closing.

**Section 19.   Headings.**  The section headings herein have been inserted for convenience of reference only and shall not modify or restrict any of the terms or provisions hereof. Unless otherwise expressly provided, or unless the context shall otherwise require, words importing the singular shall include the plural and words importing the masculine gender shall include the feminine gender, and vice versa.

**Section 20.   Entire Agreement.**  This Agreement integrates the complete and final agreement of the parties, superseding all negotiations, prior discussions, and prior agreements and understandings related to such subject matter. Any waiver of the covenants, conditions, warranties or obligations contained herein or amendment of this Agreement must be in writing, dated subsequent to the Effective Date, and signed by each of the parties. This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which shall constitute the same Agreement. No modification of this Agreement shall be valid or binding unless such modification is in writing, duly dated and signed by all parties.

**Section 21.   Severability.**  If any term, provision, covenant or condition of this Agreement is held to be invalid, void or otherwise unenforceable, to any extent, by any court of competent jurisdiction, the remainder of this Agreement shall not be affected thereby, and each term, provision, covenant or condition of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

**Section 22.   Governing Law.**  This Agreement is to be governed by and construed under the laws of the State of Idaho and each of the parties hereto irrevocably attorns to the jurisdiction of the courts of Idaho for adjudication of rights, obligations and interests arising pursuant to this Agreement. Any provision of this Agreement prohibited by the laws of the United States or the State of Idaho shall be ineffective to the extent of such prohibition without invalidating the remaining provisions of this Agreement.

**Section 23.   Tax Deferred Exchange.**  Each party agrees to cooperate in any tax deferred exchange requested by the other party, at the sole cost and expense of the party requesting the exchange.

**Section 24.   Further Assurances.**  Buyer and Seller hereby covenant to do and perform all such acts as are necessary, desirable or requested by another party to give full effect to the provisions of this Agreement.

**Section 25.   Costs; Fees.**  In any suit, action or appeal therefrom to enforce this Agreement or any term or provision hereof, or to interpret this Agreement, the prevailing party shall be entitled to recover its costs incurred therein, including reasonable attorneys' fees. The prevailing party will be that party who was awarded a judgment as a result of trial or arbitration, or who receives a payment of money from the other party in settlement of claims asserted by that party.

**Section 26.   Time of the Essence.**  Time is of the essence of this Agreement and performance hereunder.

**Section 27.   Recording.** The parties agree that this Agreement, or a memorandum thereof, shall be executed, acknowledged and recorded in the official records of Owyhee County, Idaho.

**Section 28.   Counterparts.** This Agreement may be executed in two or more counterparts each of which shall be deemed an original of this Agreement and which together shall constitute but one and the same instrument. Facsimile or e-mail transmission of any signed original document and retransmission of any signed facsimile or e-mail transmission shall be the same as the delivery of an original. At the request of either party, the parties will confirm facsimile or e-mail transmitted signatures by signing an original document.

THE PARTIES, INTENDING TO BE LEGALLY BOUND, have executed this Agreement effective the day and year first above written.

**SELLER:**

**MURPHY LAND COMPANY, LLC**

_____
Lance Funk, Member

_____
Frank Tiegs, Member

**BUYE**

_[signature]_____
James C. Hilliard, by James W. Hilliard, his attorney in fact  BY _[signature]_, POA

**REAL ESTATE OPTION TO PURCHASE AGREEMENT - 8**
123010   0845

Client:1853081.1

**Section 27.   Recording.** The parties agree that this Agreement, or a memorandum thereof, shall be executed, acknowledged and recorded in the official records of Owyhee County, Idaho.

**Section 28.   Counterparts.** This Agreement may be executed in two or more counterparts each of which shall be deemed an original of this Agreement and which together shall constitute but one and the same instrument. Facsimile or e-mail transmission of any signed original document and retransmission of any signed facsimile or e-mail transmission shall be the same as the delivery of an original. At the request of either party, the parties will confirm facsimile or e-mail transmitted signatures by signing an original document.

THE PARTIES, INTENDING TO BE LEGALLY BOUND, have executed this Agreement effective the day and year first above written.

**SELLER:**

MURPHY LAND COMPANY, LLC

_____
Lance Funk, Member

_____/s/ Frank Tiegs_____
Frank Tiegs, Member

**BUYER:**

_____
James C. Hilliard, by James W. Hilliard, his attorney in fact

**Section 27.   Recording.** The parties agree that this Agreement, or a memorandum thereof, shall be executed, acknowledged and recorded in the official records of Owyhee County, Idaho.

**Section 28.   Counterparts.** This Agreement may be executed in two or more counterparts each of which shall be deemed an original of this Agreement and which together shall constitute but one and the same instrument. Facsimile or e-mail transmission of any signed original document and retransmission of any signed facsimile or e-mail transmission shall be the same as the delivery of an original. At the request of either party, the parties will confirm facsimile or e-mail transmitted signatures by signing an original document.

THE PARTIES, INTENDING TO BE LEGALLY BOUND, have executed this Agreement effective the day and year first above written.

**SELLER:**

**MURPHY LAND COMPANY, LLC**

_____
Lange Funk, Member

_____
Frank Tiegs, Member

**BUYER:**

_____
James C. Hilliard, by James W. Hilliard, his attorney in fact

REAL ESTATE OPTION TO PURCHASE AGREEMENT - 8
123010   0845

Client:1853061.1

# EXHIBIT "A"

## "PROPERTY"

PARCEL NO. 1:
In Township 5 South, Range 4 East, B.M., Owyhee County, Idaho
Section 36:     East Half, the Northwest Quarter, the North Half of the Southwest Quarter

PARCEL NO. 2:
In Township 5 South, Range 4 East, B.M., Owyhee County, Idaho
Section 24:     East Half of the Southwest Quarter, the West Half of the Southeast Quarter
Section 25:     North Half of the Northwest Quarter
Section 26:     East Half of the Northeast Quarter

PARCEL NO. 3:
In Township 5 South, Range 4 East, B.M., Owyhee County, Idaho
Section 25:     South Half of the Northwest Quarter, the North Half of the Southwest Quarter, the Southeast Quarter of the Southwest Quarter

PARCEL NO. 4:
In Township 5 South, Range 4 East, B.M., Owyhee County, Idaho
Section 25:     South Half of the Southeast Quarter

In Township 5 South, Range 5 East, B.M., Owyhee County, Idaho
Section 30:     Government Lots 10 and 11
Section 31:     Government Lots 1, 2, and 3, the North Half of the Northeast Quarter

PARCEL NO. 5:
In Township 5 South, Range 5 East, B.M., Owyhee County, Idaho
Section 28:     Southwest Quarter of the Southeast Quarter, Southeast Quarter of the Southwest Quarter, South Half of the Northeast Quarter of the Southwest Quarter of the Southwest Quarter, East Half of the West Half of the Southwest Quarter of the Southwest Quarter of the Southwest Quarter, East Half of the Southwest Quarter of the Southwest Quarter of the Southwest Quarter, Southeast Quarter of the Southwest Quarter of the Southwest Quarter
Section 31:     Government Lots 5, 6, and 7, South Half of the Northeast Quater, North Half of the Southeast Quarter
Section 32:     Northeast Quarter, East Half of the Northwest Quarter, Northwest Quarter of the Northwest Quarter, Southwest Quarter of the Northwest Quarter, North Half ot he Southeast Quarter, South Half of the Southeast Quarter
Section 33:     Northwest Quarter of the Northeast Quarter, North Half of the Northwest Quarter, North Half of the North Half of the Southwest Quarter of the Northeast Quarter, Southwest Quarter of the Northwest Quarter, North Half of the North Half of the Southeast Quarter of the Northwest Quarter

In Township 6 South, Range 5 East, B.M., Owyhee County, Idaho
Section 4:      South Half of the Northwest Quarter, Southwest Quarter
Section 5:      Government Lots 1, 2, and 3, South Half of the Northeast Quarter, Southeast Quarter of the Northwest Quarter, Northeast Quarter of the Southeast Quarter, North Half of the Southwest Quarter of the Southeast Quarter of the Southeast Quarter, North Half of the Southeast Quarter of the Southeast Quarter, Southeast Quarter of the Southeast Quarter of the Southeast Quarter

PARCEL 6:
In Township 5 South, Range 5 East, B.M., Owyhee County, Idaho
Section 31:     Government Lots 11 and 12, Southwest Quarter of the Southeast Quarter

In Township 6 South, Range 5 East, B.M., Owyhee County, Idaho
Section 5:      Government Lot 4, Southwest Quarter of the Northwest Quarter, North Half of the Southwest Quarter
Section 6:      Government Lots 1, 2, 3 and 4, Southeast Quarter of the Northeast Quarter, Southwest Quarter of the Northeast Quarter, Southeast Quarter of the Northwest Quarter, North Half of the Southeast Quarter

PARCEL 7:
In Township 5 South, Range 5 East, B.M., Owyhee County, Idaho
Section 19:     Southeast Quarter
Section 30:     Northeast Quarter

**EXHIBIT A**
123010

Client:1853061.1